IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CEASAR M. BURRIS, Jr., #M80496,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-01023-SMY |
| | ) |
| **JOHN DOE #1, JOHN DOE #2,** | ) |
| **JOHN DOE #3, and JOHN DOE #4,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ceasar Burris, Jr., an inmate who is incarcerated at Vienna Correctional Center ("Vienna"), brings this action pursuant to 42 U.S.C. § 1983 for unspecified constitutional deprivations (Doc. 1). He is currently serving a four-year sentence for burglary. In the complaint, Plaintiff claims that he was denied adequate medical care for a leg and foot injury that he sustained during his arrest in Cahokia, Illinois, on January 29, 2013 (Doc. 1, pp. 3-6). Plaintiff now sues four unidentified police officers in connection with these injuries, including John Doe #1, #3, and #4 (Cahokia police officers) and John Doe #2 (Dupo police officer).[1] He seeks monetary damages and corrective surgery (Doc. 1, p. 6).

### Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to

---

[1] The case caption refers to Defendants John Doe #1-#3 as Cahokia police officers and Defendant John Doe #4 as a Dupo police officer. In contrast, the complaint refers to Defendant John Doe #2 as the Dupo police officer and Defendants John Doe #1, #3, and #4 as Cahokia police officers. For consistency and clarity, the Clerk shall be directed to refer to Defendant John Doe #2 as the Dupo police officer and Defendant John Doe #1, #3, and #4 as Cahokia officers in the caption.

dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).  The complaint survives preliminary review under § 1915A.

## The Complaint

In the early hours of January 29, 2013, Plaintiff and a friend sought shelter from the rain in an abandoned house in Cahokia, Illinois (Doc. 1, p. 3).  The two were trespassing at the time. As they smoked a cigarette in the back room, two unidentified police officers, Defendants Doe #1 (Cahokia officer) and Doe #2 (Dupo officer), entered the room and screamed, "[G]et down

and don[']t move, n\*\*gers" (Doc. 1, p. 4).  In response, Plaintiff and his companion threw their hands up in the air and turned around.  As Defendant Doe #1 arrested Plaintiff's friend, Defendant Doe #2 turned his attention to Plaintiff, yelling, "[N]\*\*ger[,] didn[']t I just tell you to get the f\*\*k down?" (Doc. 1, p. 4).  Defendant Doe #2 then pushed Plaintiff through the back window of the house, causing glass from the window to break and become embedded in his leg.  As Plaintiff lay on the ground, he was handcuffed.

Plaintiff allegedly screamed, "[M]y leg, something has happen[ed] to my leg!"  A third defendant, John Doe #3 (Cahokia officer), walked toward Plaintiff, saying "I hate you cott[o]n-picking a\*s n\*\*gers."  He then kicked Plaintiff twice in the back and once in the left side of his face.  Defendant Doe #2 attempted to pull Plaintiff to his feet, but Plaintiff was unable to stand.  He again told the officers that something was wrong with his leg, and he could no longer feel it.

Plaintiff was taken to the Cahokia Police Department, where he continued to complain of a leg injury during booking.  In response, Defendant Doe #3 told Plaintiff that there "would be hell to pay" if he did not stop complaining (Doc. 1, p. 5).  Plaintiff asked to be taken to the hospital, and the booking officer, Defendant Doe #4, told Plaintiff and paramedics that no hospital visit was required to treat his "scratch."  At that point, Plaintiff was allowed to see the wound.  The complaint describes a cut so deep that it exposed Plaintiff's "shin bone, with flesh hanging out [of] the cut, [and] blood in [his] jeans [and] shoes" (Doc. 1, p. 5).  No medical care was provided.  Plaintiff was taken to a cell and forced to sleep on the floor for two days.  At the end of this two-day period, Plaintiff again asked Defendant Doe #4 to take him to the hospital, and his request was denied.

He was instead transferred to the jail in St. Clair County, Illinois.  During intake, a nurse examined his leg and notified the sheriff that Plaintiff needed immediate medical attention.

The Cahokia Police Department was contacted and instructed to take Plaintiff to the hospital. A detective transported Plaintiff to St. Elizabeth's Hospital in Belleville, Illinois, where he was given antibiotics, shots, and x-rays. It was then that Plaintiff learned how close he came to losing his leg. The glass severed muscle tissue and nerves, and it remained embedded in his leg.

Plaintiff was taken to Barnes-Jewish Hospital for observation (Doc. 1, p. 6). There, he was given medication and told to follow up with professional care to determine whether feeling and strength could be restored. His medical providers indicated that Plaintiff would continue to feel the sensation of pins and needles in his leg and foot, and he would not be able to apply direct pressure to either area.

Plaintiff has since received virtually no treatment for these injuries, even during his release on bond. Medical professionals at Memorial Hospital in Belleville, Illinois, recommended surgery and follow-up care. To date, Plaintiff has received neither and continues to suffer from pain and other unspecified problems with his leg and foot (Doc. 1, p. 6).

He now sues Defendants Doe #1-#4 for $600,000 in monetary damages, corrective leg surgery, and "physical and mental therapy" (Doc. 1, p. 7).

## Discussion

Although the complaint does not plead any particular legal theories, this does not dictate the outcome of a *pro se* litigant's case. The Seventh Circuit has made it clear that "there is no duty to plead legal theories." *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *Aaron v. Mahl*, 550 F.3d 659, 666 (7th Cir. 2008)). Where the complaint includes sufficient allegations to put the Court and Defendants on notice of the claims, Plaintiff shall be allowed to proceed. After carefully considering the allegations, the

Court finds that the complaint satisfies this standard and states a cognizable excessive force claim (**Count 1**) against Defendants Doe #2-#3, a Fourteenth Amendment equal protection claim (**Count 2**) against Defendants Doe #1-#3, and a medical claim (**Count 3**) against Defendants Doe #1-#4. Each claim is discussed, in turn, below.

**Count 1 – Excessive Force**

The Fourth Amendment prohibits the use of excessive force during the execution of a seizure of a person. *See United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 705 (7th Cir. 2009)). This prohibition is applicable to an arrest, investigatory stop, or other seizure. *Graham*, 490 U.S. at 395. Under such circumstances, the Fourth Amendment's reasonableness standard applies. *Id*.

The "reasonableness" inquiry is an objective one. *Graham*, 490 U.S. at 397. "[T]he question is whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. As the United States Supreme Court has observed, Fourth Amendment jurisprudence recognizes that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). Therefore, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

At this early stage in litigation, the complaint suggests that Defendant Doe #2 used excessive force to arrest Plaintiff, by allegedly pushing Plaintiff through a glass window after he

raised both hands in the air as a sign of surrender. The complaint also suggests that Defendant Doe #3 used excessive force against Plaintiff, by allegedly kicking him in the back and face while he was handcuffed. Based on these allegations, Plaintiff shall be allowed to proceed with an excessive force claim against Defendants Doe #2 and #3.

However, Count 1 shall be dismissed against the remaining defendants, including Defendants Doe #1 and #4. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). No allegations suggest that Defendants Doe #1 or #4 were involved in Plaintiff's arrest. Defendant Doe #1 arrested Plaintiff's companion and not Plaintiff. Defendant Doe #4 served as a booking officer, who was not on the scene. The excessive force claim shall be dismissed against these defendants.

As explained above, Plaintiff shall be allowed to proceed with **Count 1** against Defendants Doe #2 and #3, and this claim shall be dismissed without prejudice against Defendants Doe #1 and #4.

**Count 2 – Equal Protection Claim**

Plaintiff shall also be allowed to proceed with a Fourteenth Amendment equal protection claim against Defendants #1-#3 at this early stage in litigation. Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment, unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *Id.*

During the course of Plaintiff's arrest, he was allegedly beaten as the arresting officers yelled racial slurs. These comments are certainly not devoid of legal significance. The Seventh Circuit has held that "[s]uch language is strong evidence of racial animus, an essential element of any equal protection claim." *See DeWalt*, 224 F.3d at 618. The allegations suggest that one or more of the officers singled him out for mistreatment because of his race and without any other apparent justification for doing so. Accordingly, Plaintiff shall be allowed to proceed with **Count 2** against those police officers who arrested him, including Defendants Doe #1-#3. Defendant Doe #4 was not involved in Plaintiff's arrest, and Count 2 shall be dismissed without prejudice against him.

**Count 3 – Inadequate Medical Care**

Different legal standards apply to medical claims of an arrestee (Fourth Amendment), pretrial detainee (Fourteenth Amendment), and prisoner (Eighth Amendment). The Fourth Amendment "governs the period of confinement between arrest without a warrant and the [probable cause determination]." *Currie*, 728 F.3d at 629 (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). An "objectively reasonable" standard applies to medical care claims brought by arrestees who have not yet had a probable cause hearing. *Id.* (citations omitted).

The Fourteenth Amendment applies to medical claims brought by a detainee, and the Eighth Amendment applies to medical claims brought by prisoners. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). The Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d

839, 845 n.2 (7th Cir. 1999)).  To state a medical claim, a detainee or prisoner must show that: (1) he suffered from an objectively serious condition which created a substantial risk of harm; and (2) the defendants were aware of that risk and intentionally disregarded it. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002).

Plaintiff's medical claim survives threshold review under each of these standards.  The complaint suggests that Defendants Doe #1-#4 were all aware of Plaintiff's serious leg injury and failed to take any action to treat it.  As a result, Plaintiff nearly lost his leg, required multiple trips to the hospital, and continues to suffer from pain.  The response to Plaintiff's allegedly obvious and serious injury appears to have been objectively unreasonable and rose to the level of deliberate indifference.  Under the circumstances, Plaintiff shall be allowed to proceed with **Count 3** against Defendants Doe #1-#4 at this time.

### Identification of Unknown Defendants

Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  "Depending on the particular circumstances of the case, the court may assist the plaintiff by . . . allowing the case to proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).   Under the circumstances presented, the Court finds that Cahokia Police Department's Chief of Police is best situated to respond to discovery aimed at identifying the unknown defendants.

Accordingly, the Clerk is **DIRECTED** to add the Chief of Police as a defendant, but only in his official capacity and for the sole purpose of responding to discovery aimed at identifying the unknown defendants. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d). In any future documents filed in this case, Plaintiff shall identify the Chief of Police by his or her proper name. Once Plaintiff identifies the unknown defendants, he shall file an amended complaint naming them as defendants in the case caption and inserting their names where appropriate throughout the amended complaint; Plaintiff shall also request dismissal of the Chief of Police at that time.

## Disposition

The **CLERK** is hereby **DIRECTED** to alter the case caption to reflect the fact that Defendants John Doe #1, #2, and #4 are Cahokia police officers and Defendant John Doe #2 is a Dupo police officer.

The **CLERK** is also **DIRECTED** to add **CAHOKIA POLICE DEPARTMENT'S CHIEF OF POLICE (in his or her official capacity only)** as a defendant in this action.

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED without prejudice** against **Defendants Doe #1** and **#4**, and **COUNT 2** is **DISMISSED without prejudice** against **Defendant Doe #4**, based on Plaintiff's failure to state claims upon which relief may be granted.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendant **CAHOKIA POLICE DEPARTMENT'S CHIEF OF POLICE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including expedited discovery aimed at identifying Defendants John Doe #1-#4 with specificity.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 28, 2014**

s/ STACI M. YANDLE
United States District Judge